UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JORGE PATINO RANGEL,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-06081-JSC

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 3

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order. (Dkt. No. 3.) On June 18, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for Temporary Restraining Order: 1) immediately releasing him from custody and enjoining Defendants from re-detaining him absent prior notice and a pre-deprivation hearing; 2) enjoining any new release conditions, such as electronic monitoring or in-person/virtual check-ins; 3) enjoining Respondents from transferring him outside the district or removing him from the United States prior to termination of these habeas proceedings; and 4) enjoining Respondents from retaining any of Petitioner's personal property that was confiscated upon his arrest. (Dkt. No. 3.) For the following reasons, the Temporary Restraining Order ("TRO") is **GRANTED**.

**BACKGROUND**

According to the record before the Court, Petitioner fled Mexico after threats of extortion and entered the United States, without inspection, in or around 2024. (Dkt. No. 1 ¶¶ 19-20.) While in the United States, Petitioner discovered his young child had been abandoned by his mother and left in the care of an elderly grandparent. (*Id*. ¶ 21.) Petitioner arranged to have his child join him in the United States, but upon entry in January 2026, his son was detained by immigration authorities. (*Id*. ¶¶ 21-22.) His son was subsequently transferred to the custody of

the Office of Refugee Resettlement ("ORR"), where he remained until May 2026, when he was released to the care of Petitioner. (*Id.* ¶¶ 23-27.) As part of the ORR sponsorship process to reclaim his son, Petitioner has submitted information to the government and participated in home visits as well as social-worker check-ins. (*Id.* ¶ 36.)

"On or about June 15 or 16, 2026, Petitioner received a phone call from a government agent. The agent explained that Petitioner and his son were being scheduled for another interview and asked Petitioner when he would be available." (*Id.* ¶ 29.) When provided with Petitioner's windows of availability, the government agent asserted they were too late in the day, so Petitioner agreed to follow up with more available times. (*Id.* ¶ 30.) The following day, Petitioner attempted to contact the agent but received no response to his phone call. (*Id.*)

On Thursday, June 18, 2026, Petitioner was detained by United States Immigration and Customs Enforcement ("ICE") officers, pursuant to a warrant issued on June 8, 2026. (Dkt. No. 9-2 at 6.) As Petitioner and his son were leaving their home, approximately five vehicles surrounded them. (Dkt. No. 1 ¶ 31.) Numerous law enforcement agents exited the vehicles, "pointed guns at Petitioner and his son, and yelled that Petitioner was under arrest." (*Id.*) "The agents then directed Petitioner and his son to get into the back seat of one of the vehicles." (*Id.* ¶ 32.) The agents drove Petitioner and his son to a parking lot, where they proceeded to pat down and handcuff Petitioner while his son remained in the vehicle. (*Id.* ¶ 33.) Petitioner then provided contact information of a family member to pick up his son from the custody of the agents. (*Id.* ¶ 34.) According to the Petition, Mr. Rangel has no criminal history in either the United States or Mexico. (*Id.* ¶ 36.) Petitioner now challenges the lawfulness of his detention.

On June 18, 2026, this Petition was filed. The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel. (Dkt. No. 3-2.) Later that day, counsel filed the motion for the TRO. (Dkt. No. 3-1.) The government filed an initial opposition, requesting further briefing. (Dkt. No. 4.) The Court issued an order setting a schedule for the supplemental opposition and a reply from Petitioner. (Dkt. Nos. 5, 7.) Briefing was completed on June 23, 2026.

United States District Court
Northern District of California

United States District Court
Northern District of California

**LEGAL STANDARD**

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**DISCUSSION**

**I.    LIKELIHOOD OF SUCCESS OR SERIOUS QUESTIONS GOING TO THE MERITS**

Petitioner has shown at least serious questions going to the merits of his claim that his ongoing detention violates his due process rights under the Fifth Amendment. To start, Respondents' position that 8 U.S.C. § 1225(b)—not 8 U.S.C. § 1226(a)—governs the instant case has been soundly rejected by the vast majority of courts to consider the issue. *See, e.g.*, *Bautista Pico v. Noem*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025)

("Every court in this district to have considered" whether 1225(b) applies to similarly situated petitioners has rejected the government's argument.); *Montero-Alvarez v. Alberran*, No. 1:25-CV-1695 AC, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (The government's position on Section 1225(b) "has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 725-32 (6th Cir. 2026); *Cunha v. Freden*, No. 25-3141, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-63 (7th Cir. 2025). *But see Buenrostro-Mendez v. Bondi, et al.*,166 F.4th 494 (5th Cir. 2026) (adopting the government's interpretation of Section 1225(b)); *Avila v. Bondi*, 170 F.4th 1128, 1133 (8th Cir. 2026) (same). The Court does not rehash that analysis, and adopts the reasoning in those decisions. Accordingly, Petitioner has shown a likelihood of success on his assertion that 8 U.S.C. § 1225(b) does not govern his detention.

Turning, then, to application of the *Mathews* test to Petitioner's detention under Section 1226(a), Petitioner has shown serious questions going to the merits of the claim. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030-36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances). To start, Petitioner has a private interest in being free from imprisonment. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693.

Respondents note many of the cases cited by Petitioner to support a liberty interest involved individuals who had previous interaction with immigration officials prior to their detention. (Dkt. No. 9 at 13-14.) True, but it is not the case that district courts have *only* found a likelihood of success on the merits when a detainee had prior interactions with DHS. *See, e.g.*,

*Cuy Comes v. DeLeon*, No. 25-cv-09283-AT, 2025 WL 3206491, at *3 (S.D.N.Y. Nov. 14, 2025). And the government has cited no case holding a detainee did not have a liberty interest merely because he had no prior interactions with immigration officials.

Additionally, Petitioner has shown serious questions going to the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Under the implementing regulations of Section 1226(a), an officer must make an individualized determination as to whether—in his discretion—"such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides for an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025). On the current record, there is no evidence any such individualized determination was made by an agent as to Mr. Rangel. Rather, the reasonable inference to be drawn from the circumstances surrounding Petitioner's detainment in front of his son, and Respondents' position that Section 1225(b) mandates detention, is that no such determination was made. Moreover, Respondents have not offered any reason why such an individualized determination would be impracticable, given it is in accord with Section 1226(a)'s implementing regulations.

## II.    IRREPERABLE HARM

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. To start, he is the primary caregiver and ORR sponsor for his young son—responsibilities he cannot satisfy while detained. Further, the likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir.

2005).  "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

### III.   BALANCE OF EQUITIES

The final two *Winter* factors, the balance of the equities and public interest, also weigh *sharply* in favor of granting temporary relief.  *Friends of the Wild Swan*, 767 F.3d at 942.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to Respondents is minimal.  The government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight.  *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).  The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips sharply in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo.  *E. Bay Sanctuary Covenant*, 932 F.3d at 779.  The status quo refers to "the last uncontested status which preceded the pending controversy."  *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention.  *See Kuzmenko v. Phillips*, No. 25-

United States District Court
Northern District of California

cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, **IT IS ORDERED** that:

(1) Petitioner's application is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are **PROHIBITED** from removing Petitioner from the United States until these proceedings have terminated.

(3) Respondents shall provide a status report confirming Petitioner's release by **3:00 p.m. on June 25, 2026**.

(5) Respondents are **ORDERED TO SHOW CAUSE** at a hearing in Courtroom 8 of the San Francisco federal courthouse, at **9:00 a.m.** on **July 10, 2026**, why a preliminary injunction should not issue. Respondents **SHALL** file a further supplemental response to Petitioner's motion by no later than **July 1, 2026**. Respondents are **DIRECTED** to address in their response why their actions, if considered under the framework of Section 1226(a), are not in violation of the Due Process Clause. Any supplemental reply **SHALL** be filed by **July 8, 2026**. Both parties **SHALL** also address whether the detention of Mr. Rangel violated the Trafficking Victims Protection

United States District Court
Northern District of California

Reauthorization Act, as argued in Petitioner's Reply Brief.  (*See* Dkt. No. 10 at 6 n.2.)  The parties may stipulate to a different briefing and hearing schedule.

(6) This Order shall remain in effect until **5:00 p.m**. on **July 10, 2026**, given the Court's trial schedule in the coming weeks.

This Order disposes of Docket No. 3.

**IT IS SO ORDERED.**

Dated: June 24, 2026

JACQUELINE SCOTT CORLEY
United States District Judge