UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JORGE PATINO RANGEL,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-06081-JSC

**ORDER RE: PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION**

Re: Dkt. No. 3

Petitioner Jorge Patino Rangel filed a habeas petition and concomitant motion for a temporary restraining order, seeking to enjoin his detention by the Department of Homeland Security's Immigration and Customs Enforcement ("ICE"). The Court granted Petitioner's motion and ordered his release from the custody of the United States by 3:00 p.m. on June 25, 2026. (Dkt. No. 11.) The Government submitted a status report confirming Petitioner's release. (Dkt. No. 12.) Additionally, the Court requested supplemental briefing in advance of the hearing on whether a preliminary injunction should issue. (Dkt. No. 11.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion for a preliminary injunction appropriate for decision without oral argument. Having reviewed the parties' submissions, and the relevant legal authority, the Court **GRANTS** Petitioner's motion. Petitioner has demonstrated serious questions as to the merits of his Due Process claim, stands to suffer irreparable harm from unlawful detention, and the balance of the equities tips sharply in his favor.

**BACKGROUND**

The Court recites the following factual assertions from the verified petition for writ of habeas corpus and the Form I-213 supplied by counsel for the Government. (Dkt. Nos. 1, 9-2.) Petitioner claims to have fled Mexico after threats of extortion and entered the United States,

without inspection, in or around 2024.  (Dkt. No. 1 ¶¶ 19-20.)  While in the United States, Petitioner discovered his young child had been abandoned by his mother in Mexico and left in the care of an elderly grandparent.  (*Id*. ¶ 21.)  Petitioner arranged to have his child join him in the United States, but upon entry in January 2026, his son was detained by immigration authorities.  (*Id*. ¶¶ 21-22.)  Thereafter, his son was transferred to the custody of the Office of Refugee Resettlement ("ORR"), where he remained until May 2026, when he was released to the care of Petitioner.  (*Id*. ¶¶ 23-27.)  As part of the ORR sponsorship process to reclaim his son, Petitioner has submitted information to the Government and participated in home visits as well as social-worker check-ins.  (*Id*. ¶ 36.)

"On or about June 15 or 16, 2026, Petitioner received a phone call from a government agent.  The agent explained that Petitioner and his son were being scheduled for another interview and asked Petitioner when he would be available."  (*Id*. ¶ 29.)  When provided with Petitioner's windows of availability, the government agent asserted the times were too late in the day, so Petitioner agreed to follow up with additional availability.  (*Id*. ¶ 30.)  The following day, Petitioner attempted to contact the agent but received no response to his phone call.  (*Id*.)

On Thursday, June 18, 2026, Petitioner was detained by ICE officers, pursuant to a warrant issued on June 8, 2026.  (Dkt. No. 9-2 at 6.)  Petitioner claims he and his son were leaving their home, when approximately five vehicles surrounded them.  (Dkt. No. 1 ¶ 31.)  Numerous law enforcement agents exited the vehicles, and the officers "pointed guns at Petitioner and his son, and yelled that Petitioner was under arrest."  (*Id*.)  "The agents then directed Petitioner and his son to get into the back seat of one of the vehicles."  (*Id*. ¶ 32.)  The agents drove Petitioner and his son to a parking lot, where they proceeded to pat down and handcuff Petitioner while his son remained in the vehicle.  (*Id*. ¶ 33.)  Petitioner then provided contact information of a family member to pick up his son from the custody of the agents.  (*Id*. ¶ 34.)

The Form I-213 supplied by the Government differently details the events.  (Dkt. No. 9-2.)  As recounted in the "background" section, the Government asserts ICE officers encountered Petitioner while he was driving his vehicle on a public roadway.  (*Id*. at 3.)  The deportation officer claims to have "initiated a vehicle stop with red and blue lights and intermittent siren,"

2

following a positive identification of Petitioner. (*Id*.) Two officers then approached the driver's side door of the vehicle, identified themselves as ICE agents, and informed Petitioner of the warrant for his arrest. (*Id*.) Five additional officers are documented as providing "[a]ssistance and perimeter security." (*Id*.) The officers then ordered Petitioner to exit the vehicle, handcuffed him, and searched him incident to the arrest. (*Id*.) Petitioner's child was in the vehicle at the time of the encounter, and the officers contacted Petitioner's sister, who took custody of the vehicle and agreed to care for the child while Petitioner was transported to a detention facility. (*Id*.) The I-213 notes Petitioner has no criminal history and states Petitioner "will be processed as a Notice to Appear and will be held without bond by the Department of Homeland Security." (*Id*. at 4.)

Petitioner challenges his detention under the Due Process Clause of the United States Constitution. (Dkt. No. 1 ¶¶ 45-51.)

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors in this analysis "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## I.      SERIOUS QUESTIONS ON THE MERITS

Petitioner has shown serious questions going to the merits of his Procedural Due Process claim. Here, the analysis turns on whether the Government detained Petitioner under 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a). Petitioner asserts the Government detained him under Section 1225 (Dkt. No. 10 at 5), which applies to any individual who is an "applicant for admission." 8 U.S.C. § 1225(a)(1). If an immigration officer determines the applicant for admission is

United States District Court
Northern District of California

3

inadmissible, Section 1225(b)(1)(A)(i) states:

> the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

Should the applicant seek asylum, then Section(b)(1)(B)(iii)(IV) requires mandatory detention "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." The Government does not contest Petitioner's assertion that the basis for his detention was Section 1225(b). Rather, the Government argues, in the alternative, that even if Section 1226(a) governed Petitioner's detention, there is no Due Process Clause violation. (Dkt. Nos. 9 at 23-25, 13 at 2.) Despite this alternative argument, the Government's insistence that Section 1225(b) controls—and its failure to contest Petitioner's assertion that 1225(b) was the basis for his arrest and detention—proves dispositive.

The vast majority of courts to consider whether Section 1225(b) requires mandatory detention of immigrants already living within the United States have rejected the Government's position. *See, e.g.*, *Bautista Pico v. Noem*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) ("Every court in this district to have considered" whether 1225(b) applies to similarly situated petitioners has rejected the Government's argument.); *Montero-Alvarez v. Alberran*, No. 1:25-CV 1695 AC, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (explaining the Government's position on Section 1225(b) "has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 725-32 (6th Cir. 2026); *Cunha v. Freden*, No. 25-3141, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-63 (7th Cir. 2025). *But see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (adopting the Government's interpretation of Section 1225(b)); *Avila v. Bondi*, 170 F.4th 1128, 1133 (8th Cir. 2026) (same). For the reasons stated in those opinions, Section 1225(b) does not provide a legal

basis for mandatory detention of individuals like Petitioner, who is not an "applicant for admission" under the meaning of the statute.

Absent a legal basis for mandatory detention, the due process balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), tilts decisively in Petitioner's favor.  The *Mathews* test considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.  As to the first prong, Petitioner has a private interest in being free from imprisonment.  Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Id*. at 693 (citation omitted).  Although the Supreme Court has held Congress may impose immigration and naturalization rules "that would be unacceptable if applied to citizens," *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976), it has not overturned *Zadvydas* to hold undocumented immigrants lack *any* constitutionally protected interest in freedom from imprisonment.

Here, the Government contends Petitioner does not have a protected liberty interest because he entered without inspection and has no prior contact with DHS officials.  (Dkt. No. 9 at 13-15.)  Citing various cases from this District, the Government notes courts have found a protected interest when prior contact with DHS officials had created an "implicit promise" the individual would not be re-detained absent a hearing.  (*Id*. at 14.)  Further, the Government argues finding a liberty interest here would have "far-reaching" implications; namely, "every alien unlawfully present in the United States can claim this constitutionally protected liberty interest."  (*Id*. at 15.)  But that liberty interest is precisely what *Zadvydas* recognized. Though the Due

Process Clause may offer different, and even lesser, protections to noncitizens compared to citizens, every individual within the United States falls within its ambit and has some interest in freedom from imprisonment. As to the former point, some district courts have found a likelihood of success on the merits of a Due Process claim when the individual had no prior interaction with DHS officials. *See, e.g.*, *Cuy Comes v. DeLeon*, No. 25-cv-09283-AT, 2025 WL 3206491, at \*3 (S.D.N.Y. Nov. 14, 2025). And the Government cites no case holding, categorically, that a noncitizen has no private liberty interest because he lacked prior contacts with immigration officials. In any event, given Petitioner's unique circumstances as the United States government's appointed guardian for his minor son, he has at least raised serious questions as to his protected liberty interest.

Turning to the second prong of the *Mathews* test, Petitioner has demonstrated a "risk of an erroneous deprivation of such interest through the procedures used" and the value of additional safeguards. *Mathews*, 424 U.S. at 335. Here, the Government's insistence that Section 1225(b) authorizes Petitioner's detention bears on the analysis. Despite the argument-in-the-alternative that Petitioner's detention is lawful under Section 1226(a), the Government has provided no indication that Petitioner has received—or would receive—any of the process afforded by that statutory provision. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (noting the distinction in the availability of bond hearings and additional process afforded to detainees under Section 1226(a) compared to Section 1225(b)). In all its supplemental briefing, the Government does not dispute Petitioner's assertion that he was detained pursuant to Section 1225(b). So, on this record, the question of whether Petitioner's detention is constitutionally valid under Section 1226(a) is merely hypothetical, and the Court declines to offer an advisory opinion on the matter. Given Section 1225(b) does not provide a lawful basis for mandatory detention of individuals like Petitioner, the risk of an erroneous deprivation of his private liberty interest is effectively guaranteed.

Last, the Government has not provided any argument or evidence as to the fiscal and administrative burdens that would accompany lawful detention of Petitioner. Indeed, it strains credulity to suggest the Government suffers a burden in detaining individuals pursuant to

appropriate statutory authority and offering them statutorily required process.  Having satisfied the three prongs of the *Mathews* test, Petitioner has shown at least serious questions on the merits of his Procedural Due Process claim.[1]

## II.   IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  Such "[i]rreparable harm is presumed if [Petitioner is] likely to succeed on the merits because a deprivation of constitutional rights always constitutes irreparable harm." *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Currently, Petitioner is out of ICE custody by court order.  (*See* Dkt. Nos. 11, 12.)  However, the Government has not represented that absent entry of an injunction it would not re-detain him pursuant to Section 1225(b).  The specter of unlawful detention remains.

Since the Court has determined Petitioner has shown serious questions going to the merits of his Due Process claim, it follows that he has shown irreparable harm derived from a constitutional violation.  Additionally, Petitioner is the ORR sponsor and primary caregiver for his young son.  If detained, Petitioner could not properly discharge his obligations as a sponsor nor his role as father and guardian for his child.  Therefore, Petitioner has met his burden to show irreparable harm.

## III.   BALANCE OF EQUITIES AND PUBLIC INTEREST

When, as here, the Government is the opposing party, the Court analyzes the final two factors—balance of the equities and the public interest—together.  *Nken*, 556 U.S. at 435.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."

---

[1] Since the issuance of this preliminary injunction prohibits detention of Petitioner pursuant to 8 U.S.C. § 1225(b) during the pendency of these proceedings, the Court need not address the parties' separate arguments as to whether violation of substantive due process also compels release.  Further, for the same reason, the Court need not reach the parties' arguments as to Petitioner's standing to bring a claim under the Trafficking Victims Protection Reauthorization Act on behalf of his son.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at \*3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the Government is minimal. At most, the Government faces a short delay in detaining Petitioner under the proper statutory authority and affording him all process owed under Section 1226(a). Indeed, the Government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). Here, the final two *Winter* factors tip sharply in Petitioner's favor.

**CONCLUSION**

For the reasons stated above, Petitioner has carried his burden to show a preliminary injunction is warranted here. Accordingly, Petitioner's request for a preliminary injunction is **GRANTED**. During the pendency of these proceedings, the Government may not re-detain Petitioner pursuant to 8 U.S.C. § 1225(b), absent further order of the Court. Should the Government detain Petitioner pursuant to 8 U.S.C. § 1226(a), it must do so in accordance with the statutory requirements of the Section, and must afford Petitioner all process he is owed under the statute. Further, the Court will not require a bond as "there is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Lastly, the hearing on Petitioner's motion set for July 20, 2026, is **VACATED**. The parties shall meet and confer and, within 30 days of the date of this Order, propose a schedule for

resolving the remainder of this case or a stipulation that the reasoning in this Order warrants granting the petition and entering judgment.

**IT IS SO ORDERED.**

Dated: July 17, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge